**PACIFIC NORTHERN MARINE FUELS, INC., Plaintiff**

**v.**

**THE M/V CLOVER #7 et al. and THE M/V CLOVER #8 et al.,
Defendants in Rem
HANIL DEEP SEA FISHERY CO., LTD., Defendant in Personam**

High Court of American Samoa
Trial Division

CA No. 90-95
CA No. 91-95

August 29, 1996

Before KRUSE, Chief Justice, and SAGAPOLUTELE, Associate Judge.

Counsel:     For Plaintiff, Marshall Ashley
             For Intervenors Itochu Corp. & Grace Shipholding S.A.,
             Brian M. Thompson
             For Intervenor YKL Japan Ltd., Charles V. Ala`ilima
             For Intervenor Hyundai Merchant Marine Co., Barry I.
             Rose
             For Intervenor Sunyang Marine Engineering Co. & Mr.
             Kwan, Togiola T.A. Tulafono & Roger Hazel
             For Intervenor Wonjin International Co., Ltd., Asaua
             Fuimaono
             For Intervenor Samoa Import & Export Inc., Ellen A.
             Ryan
             For Intervenor Tae Sang Kim, et al., William H. Reardon
             For Intervenor Daeshim Maritime Co., Ltd, Afoa L.S.
             Lutu and Aumoeualogo Soli

Decision and Order For *In Custodia Legis* Costs:

## INTRODUCTION

The hearing in this matter resumed June 7, 1996, having commenced March 5, 1996, and continued to the later date. Evidence was presented on the issue, *inter alia*, of the payment of *custodia legis* fees, which had been incurred by plaintiff for the arrest of the vessels *Clover #7* and *Clover #8*. Three objections to the payment of the fees were made. On June 10, 1996, we ordered the three objecting attorneys to present written memoranda in support of their objections, or they would be waived.

Hyundai Merchant Marine Co., Ltd chose not to file a memorandum, and thus its objection is waived. YKL Japan, Ltd. ("YKL") filed a memorandum on June 12, 1996. Itochu Corporation and Grace Shipholding S.A. filed a memorandum June 18, 1996. Finally, Pacific Northern Marine Fuels, Inc. ("PNMF") filed a response memorandum on June 27, 1996. No other memoranda have been filed.

## DISCUSSION

When a vessel is seized and sold, the costs of holding the vessel in *custodia legis* are generally given priority over other claims where "equity and good conscience" so require. *New York Dock Co. v. Steamship Poznań*, 274 U.S. 117, 122 (1927). However, claims incurred while the vessel is in *custodia legis* must be proven and supported just as any other claim. Not only must the claims be equitable and reasonable, they must inure to the benefit of all claimants. *See Kingsgate Oil v. M/V Green Star*, 815 F.2d 918, 922 (3d Cir. 1987). PNMF has moved this court to pay the funds it has expended in *custodia legis* for the two vessels in this case.

As of June 7, 1996, PNMF claims total expenditures in *custodia legis* for the *Clover #7* of $30,278.25: $22,739.06 for mooring, $668.94 for shore power, $6,715.25 for watchmen, and $155 for advertising. As of June 7, 1996, it claims total *custodia legis* expenditures for the *Clover # 8* of $40,694.77: $27,390.88 for mooring, $668.94 for shore power, $12,479.95 for watchmen, and $155.00 for advertising. The charges for mooring and shore power include interest.

I.       Mooring And Shore Power

YKL has objected to the payment of the mooring and shore power fees on the basis that they are usurious. Southwest Marine, who docked the vessels while under arrest, has invoiced its services with interest on past due accounts accruing at 18%. They have billed interest for every invoice presented to PNMF. There was no written agreement between the parties to the contract, Southwest Marine and PNMF. The American Samoa usury statute states:

> Except as otherwise provided in this title, no person may charge more than 15 percent a year as interest on a debt or obligation, and no agreement to pay a rate of interest higher than 6 percent a year shall be enforceable unless the same is in writing and is signed by the party to be charged.

A.S.C.A. § 28.1501(a). Thus, in the absence of a written agreement signed

154

by the party to be charged, any interest rate above 6% is usurious.[1]  For usurious interest charges, Samoan law provides:

> Any person who . . . extends credit in any manner whatsoever and takes, receives, reserves, or assesses interest . . . thereon at a rate higher than that allowed by law . . . shall forfeit to the debtor the full amount of the debt or obligation upon which the unlawful interest . . . was charged.

A.S.C.A. § 28.1510. Thus, YKL argues that the *custodia legis* fees charged by Southwest Marine are illegal and that PNMF should not be repaid for incurring an illegal debt.

■  The primary defense offered by PNMF is that YKL, who is not a party to the contract between Southwest Marine and PNMF, has no standing to seek that the contract be voided.  As the *Shantilal* Court stated "the . . . forfeiture provision [creates] a defense for *debtors* in civil court." *Shantilal Bros., Ltd., v. Samoa Miscellaneous, Inc.*, 29 A.S.R.2d 210 (Trial Div. 1996) (emphasis added). Since no claim is currently before the court on the Southwest Marine contract, and since Southwest Marine, the debtor, is not even a party to this action, A.S.C.A. § 28.1510 is not directly applicable.

On the contrary, what is presently before the court is PNMF's claim to have expenses paid which they have incurred in *custodia legis*.  They want these funds to be paid out of the proceeds from the sale of the ships.  YKL has an interest in how this fund is expended and has standing to challenge payment of unreasonable docking fee, whether or not PNMF eventually challenges the underlying contract in another action.

■  Thus the sole issue currently before the Court is the determination of reasonable and equitable *custodia legis* fees. After the Court determines what *custodia legis* fees are reasonable and equitable, it may then give priority to those fees:

> A person furnishing goods or services to a vessel after its arrest (in *custodia legis*) does not acquire a maritime lien against the vessel for the value of those goods or services.
> A district court sitting in admiralty, however, has

---

[1]  The writing requirement has also been held to apply to A.S.C.A. § 28.1503, which provides that a maximum interest rate of 18% may be charged on certain business debts. *See Shantilal Bros., Ltd., v. Samoa Miscellaneous, Inc.,* 29 A.S.R.2d 206 at 211 (Trial Div. 1996).

> inherent equitable power to give priority to claims arising out of the administration of property within its jurisdiction where 'equity and good conscience' so require.

*Kingsgate Oil v. M/V Green Star*, 815 F.2d 918, 922 (3d Cir. 1987); *see New York Dock Co. v. Steamship* Poznan, 274 U.S. 117, 122 (1927). The court will *only* reimburse *custodia legis* expenses that are reasonable and equitable. This is the only way to ensure that the interests of all parties are protected.

■ Although the usury statute is not directly applicable, this Court finds it useful in the determination of reasonable interest charges. So stating, the Court finds 6% to be the maximum reasonable interest rate on an oral contract for indebtedness.

The *custodia legis* fees for mooring and shore power will be paid from the proceeds of the vessels' sale but interest on past due accounts shall be charged at 6% rather than at the unreasonable rate of 18%.

II.     Watchmen

■ Itochu and Grace Shipholding ("Grace") have objected to the payment of any *custodia legis* fees after December 11, 1995, the date upon which the sales of the vessels were supposed to be final. Those sales were delayed because the purchasers did not produce the payments on that date. Itochu and Grace state the correct standard for determining which expenses qualify as administrative expenses that will receive priority: "'administrative expenses' are recoverable when the expenditures inures [sic] to the benefit of all claimants, where it contributed to [or created] the fund now available.'" Itochu Br. at 3 (quoting *Kingsgate Oil v.* M/V Green Star, 815 F.2d 918, 918) (modification in original). They claim that the expenses incurred after December 11, 1995, did not inure to the benefit of all the claimants. We disagree.

When the buyers failed to produce the capital on the appropriate date, the ships were required to remain under *custodia legis*. This was not the fault of PNMF, who was required to continue incurring those expenses. While Itochu might make an argument that those expenses are properly charged against the buyers, such a claim is not before us. In order to obtain the funds upon which all parties now claim, the vessels had to remain under the jurisdiction of the court. We will not charge the cost of the buyers' failure to PNMF who undertook the burden of maintaining the vessels in *custodia*

156

*legis.*

## CONCLUSION

Thus, the claimed *custodia legis* fees for mooring the vessels at Southwest Marine and for shore power approved with interest accruing on past due amounts at the rate of 6%. The other *custodia legis* fees are approved in full.

PNMF will submit to this Court a recalculation of Mooring and Shore Power charges using the approved rate of interest. PNMF will also be paid $6,715.25 for watchmen and $155 for advertising on the Clover #7, for a total of $6,870.25; and $12,479.95 for watchmen and $155 for advertising on the *Clover #8*, for a total of $12,634.95.

It is so ordered.